Good morning. Christy Hughes from Federal Defenders on behalf of Mr. Gonzalez-Melchor. I'm going to attempt to reserve two minutes for rebuttal. I'm going to move directly to the merits of the appeal, unless Your Honors have any questions about the waiver issue. The IJ told Mr. Gonzalez-Melchor the only thing in the law that could possibly save you from deportation is voluntary departure. But I'm not considering you for that, even if you asked for it, I'm sorry, because I would not give it to you, even if you asked for it. This was a gross violation of due process. Not only did the IJ not meaningfully advise Mr. Gonzalez-Melchor that he was actually eligible for voluntary departure, but he did not give him any opportunity to develop the issue and argue that he should be granted relief. This means that his waiver of appeal was invalid and that he was deprived of judicial review, and also that his deportation proceeding was fundamentally unfair. It cannot support his conviction for illegal reentry. Ms. Hughes, the IJ spoke directly to your client. He learned that your client had entered this country illegally several times. Why shouldn't we conclude that the IJ considered and rejected voluntary departure for your client based on his individual record? Well, I think for a number of reasons, Your Honor. First, I think we just look at what the IJ himself said, which is I'm not considering you for voluntary departure, even if you asked for it. Because I've looked at all your records, and he obviously had looked at this record that your client had come in and out several times. Well, I think this Court has said repeatedly that when determining whether or not to exercise discretion, the IJ has to look at both positive and negative factors, and they have to give the alien an opportunity to develop the issue. And when the IJ says, even if you asked for it, I would not consider you for it, that's pretty clear that he's not going to give anyone that hearing. What factors would an IJ look to? An IJ in general? Yeah. And for voluntary departure? Well, any criminal history of which Mr. Gonzales-Melchor had none, any immigration contacts, again, Mr. Gonzales-Melchor had none, the statutory eligibility, whether or not he could afford to depart the United States. The IJ didn't ask, but Mr. Gonzales-Melchor could have. We've been working here for a number of years. And then the equities. And here, Mr. Gonzales-Melchor had entered. What were the equities? Mr. Gonzales-Melchor had entered the United States 10 years before this hearing in 1995. He told the IJ. Was that the first time that he entered the United States? That was the first time. Okay. But he had been back and forth. He had. And he told the IJ that the last time that he'd been to Mexico was, in fact, so long ago, he couldn't even remember when the last time was that he crossed the border. And so there is evidence in the record. He also told the IJ that he had been living half-time in Mexico and half-time in the United States. The IJ asked him whether he had any family members in this country. He said no. Correct. He didn't at that point. But he did have a good history in the United States. He had been living and working here for a number of years. So he had a work history. The IJ never inquired into any of that. And I think that when we look at the equities and when we look at the prejudice, first, under Icardi, we assume prejudice here because the IJ completely failed to exercise discretion. And the government's never rebutted that presumption. But second of all, in terms of looking at the equities, this Court has said that we look at two things. First of all, we look to whether or not it would have been within the IJ's discretion to grant relief. And we look at other instances in which this Court and the BIA have upheld a favorable grant of discretion for voluntary departure. And this Court has found that it's well within the IJ's discretion to grant voluntary departure for aliens with sexual battery convictions, spousal battery convictions, numerous DUIs, six illegal reentry convictions. Mr. Gonzales-Meltor had absolutely none of that, no convictions, no immigration contacts, and a relatively long history with the United States, at least four years living and working here. And, again, he'd come here. You know, the record's a little bit unclear as to how many years he had been here. But he had told the IJ, I first came here in 1985. So he does have a long history here. And the other thing this Court has said when reviewing prejudice is we have to look at prejudice through the lens of the relief that the alien is seeking. And this Court stated that most recently in Alcazar Bustos where voluntary departure is not an onerous form of relief. You don't get the right to stay here, live here, and work here. You still have to leave the country. It's not like cancellation removal where we have very high standards. So you don't have to show a lot. And so in terms of the equities, there aren't a lot of equities necessary for this. The IJ has very wide discretion to grant voluntary departure. And so when we're considering the equities and we're looking at the balancing factors, again, very broad discretion in grant relief, no bad factors. And part of the reason that these equities are sufficient is he doesn't have a lot of bad things to balance out. Those people that I mentioned with the DUIs and the six illegal reentry convictions and the sexual battery, they need, perhaps, U.S. citizen family members to balance out those negative factors in the record. Does the fact that your client had reentered the country without inspection on several previous occasions constitute, if you will, bad facts that the IJ could have relied upon? Yes. And he had done that, what, five, six, seven, eight times? Correct. Admittedly. Admittedly, correct. And in a matter of Gamboa, the IJ is entitled to look at the alien's immigration history. But, again, these were not – he hadn't even been subject to the catch-and-release program that was going on. I understand. I mean, here you have – I think this mass treatment program is pretty well over at this point, but we're dealing with the reality that he was dealing with a lot of folks. He had apparently looked at the record, and admittedly, your client had, you know, been amassed by a letter going back and forth, even if he hadn't had the catch-and-release program. He had done that a lot. And in this particular case, the IJ said, speaking of those who he felt didn't qualify, for the rest of you, I see bad facts which tells me you don't deserve voluntary departure. For example, several of you have entered the country without inspection on previous occasions. Isn't that sufficient under the case law to permit the IJ to do what he did? Well, it may be sufficient if the IJ had given him an opportunity to say, look, yeah, I've done these things. I've crossed illegally. But I've also, you know, rescued a child from a burning building. What's the case that he gave him that opportunity? What's he going to say? He'd already admitted that's happened, right? Correct. So what's he going to say? I changed my mind? The IJ had changed his mind? No, no, your client. No, I think that he – I mean, the IJ – under Campos-Granillo, the IJ, before exercising discretion, what this IJ admittedly said, I'm not going to do. Right. The IJ has to say, okay, tell me something good about your case that would allow me to exercise favorable discretion. And all the IJ has to do – So from your perspective, unless that is done, we have to reverse and grant the petition? Correct. And in Frias-Flores, which is the recent case from a panel of this court, which had 28-J, that's exactly what this court said, which was the IJ didn't allow the alien to present any favorable factors, didn't weigh the positive and negative factors, and so that was a due process violation. Well, why would we have to reverse? Why wouldn't we amend and see if there was prejudice? Well, again, I go back to my prejudice argument, which is it's presumed here under Riccardi this is a complete failure to exercise discretion, admittedly by the IJ himself. In Frias-Flores, we did have pretty powerful equities there, didn't we? We had, what, 10 United States citizen children? Correct. And the family ties, we had a lengthy work history. And your client has been asked whether he has any family. This is the obvious – this is the easiest equity for an IJ to ascertain, is what kind of family do you have in the United States? Are you married to somebody here? Do you have U.S. citizen children? The answer was no. So right off the bat, the easiest thing for him to satisfy is a no answer. Well, when the IJ was asking – the IJ also asked, when did you first come to this country? Those were questions that the IJ himself stated, these are defenses to deportation. These are things like adjustment of status, not deportable as charged, cancellation of removal. The IJ never asks about any favorable factors that go to discretionary relief. The IJ is strictly asking about – in fact, the IJ says, tell me about any immigrant visa or immigrant card or permit to be in this country. That's what he means when he says I'm going to ask you these questions about a possible defense that you may have. He doesn't ask about anything good that you've done while you've been here in the last four or five years that would allow me to exercise favorable discretion. Is he required to do that? Well, he is – he's not required to specifically ask that, but he's required to look at the positive and negative factors. And here he said, I'm refusing to do that. Even if you ask for it and you come forward with favorable factors. All right, is he saying that he refuses to look at good ones, or is he saying he's looked at the record as he understands it and he's concluded that that fact is predominant? Well, I don't think that's what he tells them. He says, I will not consider you for it. I mean, the IJ's words are clear himself. I'm not listening to what you have to tell me. I guess what I'm trying to understand is, are you saying that he has to actually articulate all of his reasoning? It's almost like a 3553A kind of thing. Do you have to specifically go through all those things in order to validate what you do? In this case, it's clear that the IJ looked at a lot of things about your client and concluded that he was not going to let him have voluntary departure. Is it your position that either our case law or whatever else that you're relying upon requires the IJ to have expressly articulated the good and the bad and told why he decided that the bad acts predominated? Well, I have two responses, Your Honor. First of all, Compost-Ranillo, that is the case. The IJ actually knew of favorable factors in her mind, but her opinion in deciding to deny discretionary relief didn't reference any of those. And so this court said that's not the way that an IJ is supposed to exercise favorable discretion or deny discretionary relief. You have to look at both types of factors. But second of all, we're not quibbling withóit's not a 3553A type argument in that we're quibbling with the decision the IJ ultimately reached. We're saying in reaching that decision it was sort of a procedural error and that he completely failed to go about reaching his decision the correct way. He failed to exercise any type of discretion. And that's what the district court found, isn't it? Correct. So your response would be to possibly I have no prior convictions, I've never been in trouble, that kind of thing. And I have a long work history here in the U.S. But then the district court judge found no prejudice. So wouldn't that be the question here? And wouldn't we have to remand? If the IJ then did it appropriately, gave him a chance to respondó Well, the district court judge applied the incorrect standard of prejudice review. The district court here looked at this particular IJ and said, oh, I think he has a really high standard for granting voluntary departure. And so relief wasn't plausible. But that's not the way we look at prejudice. We don't look whether or not the alien would have actually gotten relief from this particular IJ. In fact, this court before had looked at immigration law experts talking about how frequently this type of relief is granted. So it's not this particular IJ in this particular case. It's whether or not it's plausible that the attorney general would have exercised favorable discretion in granting this relief. And plausible is a very low standard. Correct. All right. Thank you. Especially for voluntary departure. Especially. Thank you, Ms. Hughes. We will hear from the government. Ms. Cantor. Good morning, and may it please the Court. My name is Rebecca Cantor, and I represent the United States in this appeal. Before I address the merits of the case, I want to start where I think this Court should start, which is to recognize that in this case, Mr. Gonzalez waived his right to appeal, and we shouldn't even be here. We shouldn't even be talking about the merits. At his sentencing before Judge Burns, the defendant knowingly and voluntarily gave up his right to appeal, and after doing so, he received a reduction in his sentence. The Court properly allowed the defendant time to consider whether he wanted to waive appeal. Counsel, have you ever seen a spontaneous plea negotiated by a district court? Well, it's not a plea, Your Honor. The defendant had already been convicted after a trial. So it doesn't implicate Rule 11. It's not a plea, and it's frankly not an agreement. The way to think about this waiver of appeal is not in the context of contract-type law and a negotiated agreement. That's typically how we think of a waiver of appeal, because typically it's in a plea agreement and there is a negotiation. Here, it's not. But if the district court's involved, I mean, the United States versus Markin, where the Sixth Circuit said it was troubled by the district court's involvement in sentencing discussions regarding whether a defendant should waive legal arguments. And the Court then analogized to the Rule 11 ban on involvement by the Court in plea negotiations. It seems to me that that case and the principles behind Rule 11 should apply here. And why shouldn't they? The critical distinction between what happened in Markin and what happened in this case is that Markin involved a negotiation between the defendant and the government, whereby the defendant gave up his objections to the pre-sentence report. He withdrew them because he believed with his negotiations with the government that the government would then recommend a sentence of 48 months instead of the 51 months low end. So there was this idea of a negotiation between parties, which made it sort of have that ring of Rule 11, even though it was after conviction. Here, that's not what we have. As defense counsel even, or appellant, indicated in their briefing, the government was not part of these negotiations. What you have is a waiver that's more akin to a waiver of the right to have a jury track, the right to have counsel and instead choose to self-represent. Yeah, but those are all things that are within the control of the district court and the parties. This is the district judge saying, I'll give you what I think is a good sentence. If you agree not to complain to the Ninth Circuit and ask them to grade my paper. That is one way to interpret it. Well, I don't know, is there any other way to interpret it? He asked him to waive his right to appeal. And that's something that the district court can't control. That's not within his courtroom. That's our bailiwick. The way that I would suggest the court should view what the district court judge was doing was analyzing, as he's supposed to at sentencing, what he thinks of this defendant, of his history and characteristics, one of the 3553 factors, and the need for adequate deterrence. And from this district court judge's perspective, the willingness of the defendant to give up his right to appeal as part of his manning up, I think is the language the district court used, would go a long way towards that judge believing him when he says, I won't come back. I really accept that I did something wrong. I'm accepting responsibility. And when I tell you I'm not going to reenter illegally, I mean it. So the judge was really trying to analyze this person's character, which is permissible under 3553. And he saw waiving the right to appeal to be a part of that true remorse and genuine. What if the district judge said, I'm going to give you half the sentence in the guidelines if you don't take an appeal, because I'm really worried about some of the evidentiary rulings I made in this case? If the judge said it like that, that explicitly, that the reason he was doing it had nothing to do with him analyzing what he thought of this defendant's character, but rather there was an improper purpose, maybe we'd have a different situation. But the problem is this is a very, very coercive framework in which the district court is negotiating away the right to review the district court's own decisions. And that seems to be sort of an action of self-preservation on the part of a district court that could be very easily abused. And it would be very easy for a district court to be thinking in the back of his mind, I don't want those evidentiary rulings reversed by the Ninth Circuit because I find it personally embarrassing. And therefore, of course, I'm not going to say so, but that's what I'm thinking. I disagree that it's coercive in that you are in a courtroom setting where the defendant has learned counsel representing him who could very well say, no, thank you, Your Honor, we would like you to evaluate him on 3553 factors, we retain our right to review. Isn't that unrealistic, though? I mean, here you've got somebody standing before a person that's going to determine where you're going to spend the next few years of your life. And that person sitting up there in a robe and very intimidating, extremely intimidating, even for the lawyers. You know about that. And he's saying, look, if you agree to waive your rights to review my work, I'm going to give you a good deal. That's highly coercive, isn't it? I disagree that it would be highly coercive. Would you like to be in that situation? I think that if I had counsel and I was able to consult with counsel before making a decision as to whether to give up my rights and I could make a determination as to how strong I thought my appellate argument was versus wanting to spend less time in jail, I would want to have the option to make that choice. Let's assume that you were not well-educated. Perhaps you didn't even speak the language very well. Would that change your analysis? Again, represented by counsel who does speak the language, is well-educated and knows the strength of the appellate argument. The contrary, the problem is that the inverse to what Your Honor is saying is that allowing this to take place where a defendant can make a promise to a district court judge and waive a right, and we don't know what went on in that conference, maybe between counsel and the defendant. That's part of the problem. Let's go ahead and say this, that we're going to waive, we'll give this discount sentence and we'll do it anyway. I'd like to think that's not what happened. I'd like to think that the counsel, the conference was maybe, you know what, let's think about this and this is a better course of action and that it was a genuine waiver in the moment. But the problem is if it's then unenforceable, the defendant gets to have his cake and eat it too, where he can sit there and counsel and the defendant can make a promise to a judge's face and not have to respect that after the fact, and there's no adverse consequence for that. If we thought that the plea arrangement that the district court negotiated was wrong, the plea waiver, and we agreed with the government, so that we disagreed with you on that but agreed with you that there was no prejudice here, should we remand this for resentencing? No, Your Honor. I don't think so because the sentence hasn't been appealed, and so if there is no, if there was no prejudice, and I'll go ahead and move to that since I see I have only a couple minutes left, and I would like to address the fact that there was no prejudice in this case. I don't, I think the court could make that finding that there was no prejudice and the conviction would stand that there wouldn't be resentencing. But the standard was plausibility, a very, very low standard. Absolutely. And in this case, why could the defendant not have met that threshold requirement? The reason the defendant could not have met that threshold requirement is because the immigration judge had the same facts that we had, the same facts that the district court had, and within that set of facts, we know what the district, what the immigration judge would have done. He would not have exercised his discretion to grant relief. How do you know that? What really distinguishes, how do we know that he had the same set of facts? No, how do you know that's what he would have done? Because that's what he said. He said with the facts that he had before him, he would not exercise his discretion. He was denying, if the defendant asked for voluntary departure, he would deny that. But what about the facts he didn't have before him? But, Your Honor, we don't know what those facts are. That is exactly correct. Shouldn't we know what those facts are? The defendant has the burden, yes, to present that. For example, in the Frias case, what's really remarkable is the defendant was able to establish in front of the district court a whole series of facts relating to his family history, his years in the United States, significant favorable evidence, which the defendant here has never put forward. There's been no evidence in front of the district court saying, this is why the immigration judge messed up. He didn't know these things, and if he had, it would have changed his ruling. The defendant says, I didn't have the chance to present those facts because he looked. I've been in and out of the country, and he announces, I'm not going to grant voluntary departure to anybody. Well, I disagree that he didn't have the chance to present those facts to the immigration judge, and I'll address that in a moment. But more importantly, what I'm saying is you have only 49 seconds. Maybe you ought to address that. Well, my point is that he had the opportunity in front of the district court in this collateral attack to present those facts. He never did that. The defendant has had his chance to say why he would have been able to show good moral character back in 1995. We don't know what any of that is, and that's what really makes this case different from Frias, where the defendant, when he got in front of the district court judge, established a record where we could then look at that record and say, there is a plausible grounds for belief because this is what the favorable evidence shows. That doesn't exist in this case. But in the immigration court, the defendant was told at the very beginning, specifically by the immigration judge, that he should share anything that he has. You can present to me or at least tell me about, and I'm reading from page 6 of the excerpt of records, about evidence or witnesses in your defense. You can make a statement in your defense in which you can tell me anything that you think is important about your case. I would argue that that's actually even better than saying tell me why you have good moral character because it's even broader. Tell me anything and everything. And then during that specific colloquy, the defendant did not present anything that would resemble favorable facts. And I think I would submit that those questions that were asked of him about his family, his residence in the United States, those were exactly the questions that would have elicited favorable facts if those favorable facts existed. But they didn't exist. And even if the defendant didn't, I see that I'm over time. You are. I think we understand the argument. We thank you. In that case, I'll submit thank you, Your Honor. Thank you, Ms. Hughes. Ms. Cantor, I think we took you over your time, but I will allow you a minute to respond to the government. Thank you. Well, since I didn't talk about waiver the first time around, I'll just very briefly. In terms of remanding for resentencing, the district court sentencing procedure isn't at issue. The government hasn't appealed it. And under green law, the Supreme Court has said this court cannot sui What are you asking us to do? I'm asking this court to hold that the waiver of appeal is invalid and unenforceable. Okay. And let's assume if we do that, then what happens? Then this court moves on to the merits. Right. In fact, your client didn't wait, didn't honor the plea agreement in any event, so it's just kind of no harm, no foul. So now we get to the second part. Now, what do we do with that according to your request? This court should find, A, that it's inherently prejudicial under ICARI, and, B, that relief was plausible here. He had sufficient equities for an IJ to grant voluntary departure. And if we agree with you, then what do we do? Then you dismiss the indictment. Okay. So you're just saying it's done, you don't send it back for any further finding about plausibility on the prejudice problem. I don't think that's necessary. I think that we've demonstrated prejudice because relief was plausible. And the district court, you know, it had a chance to look at the prejudice and it applied the wrong standard. Let's say I agree with you, but if the district court applied the wrong standard, you didn't look at it, you're asking us to look at this as an appellate court based upon the cold record as opposed to sending it back to a finder of fact that can examine it in the first instance with the correct standard. Well, I think this court, I mean, this court frequently makes a determination on prejudice. And in Frias-Flores, it just made that determination. And on these facts, we demonstrated prejudice because relief was plausible. So I think the record, cold or warm, is sufficient for this court to make a prejudice. Are there other facts that we don't know about that the district court, you would have liked to have had the IJ know, or we got everything basically in the record? You've had an opportunity to provide anything else that you really wanted the district court to know about prejudice, haven't you? I believe so, Your Honor. Okay. So we really know everything that we're going to know about Mr. Gonzales? Correct. So there would be no need for a remand. Okay. Thank you. Thank you very much, Ms. Hughes. We thank both counsel for a very helpful argument. And the last case on the oral argument calendar is United States v. Ramirez-Ariola.
judges: Nelson D. W., Bybee, Smith M.